# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 17-10-GF-BMM |
| Plaintiff, | |
| vs. | **ORDER** |
| THOMAS EDWARD MANCHA, | |
| Defendant. | |

## INTRODUCTION

Defendant Thomas Mancha ("Mancha") filed a motion for compassionate release on July 7, 2025. (Doc. 88.) Mancha's counsel filed a supplemental brief in support of Mancha's motion on October 9, 2025. (Doc. 96.) Mancha argues that his kidney failure, which is irreversible and terminal, and the necessary medical treatment associated with this illness constitute extraordinary and compelling reasons for a sentence reduction to time served plus a period of supervised release. (*Id*. at 14). The Government opposes Mancha's motion. (Doc. 98.) The Government argues that Mancha has not provided extraordinary and compelling reasons justifying a sentence reduction and warrants a denial of the motion. (*Id*.)

## FACTUAL BACKGROUND

A Grand Jury charged Mancha with one count of First-Degree Murder in violation of 18 U.S.C. § 1153(a) and 1111(a) on February 2, 2017. (Doc. 10.) A

Superseding Information was filed on October 2, 2017, charging Mancha with one count of Second-Degree Murder in violation of 18 U.S.C. § 1153(a) and 1111(a). (Doc. 56.) Mancha entered a guilty plea to the count stipulated in the Superseding Information on October 3, 2017. (Doc. 59.)

Mancha's offense level was 35 and his criminal history score placed him in category II. (PSR at ¶¶ 35, 42.) The Court sentenced Mancha on January 18, 2018, to the custody of the Bureau of Prisons ("BOP") for 240 months (20 years) with 366 days of credit for pre-trial custody. (Doc. 66; Doc. 96 at 3.) Mancha was further sentenced to 5 years supervised release. (Doc. 66.)

Mancha filed a motion for compassionate release in 2020 under 18 U.S.C § 3582(c)(1)(a), citing his kidney failure and other health problems as extraordinary and compelling medical reasons for release. (Doc. 96 at 2.) Mancha has served almost 7 years of his 20-year term of imprisonment. Mancha's projected release date is February 2, 2034. *See* Inmate Locator, https://www.bop.gov/inmateloc (accessed October 28, 2025). Mancha is incarcerated at MCFP Springfield in Springfield, Missouri. *Id.*

## DISCUSSION

I.   **Availability of Relief Under 18 U.S.C. § 3582**

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558,

The First Step Act of 2018: An Overview 1 (2019)). The Court may modify a term of imprisonment upon motion of a defendant if the Court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must consider the factors set forth in 18 U.S.C. § 3553(a) and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission" when the Court is considering the reduction of a defendant's term of imprisonment. *Brown*, 411 F. Supp. 3d at 448 (citing 18 U.S.C. § 3582(c)(1)(A)).

Congress has not defined the circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the United States Sentencing Commission ("USSC") to issue a policy statement describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021).

Section 1B1.13 of the United States Sentencing Guidelines ("USSG"), titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"), previously only provided a policy statement for motions filed by the BOP director. Amendments to USSG § 1B1.13 took effect on November 1, 2023.

3

"The amendment revises §1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions." USSC, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 7, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

The amendments provide that:

Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.—

   . . .

   (B) The defendant is—
      (i) suffering from a serious physical or medical condition,

      (ii) suffering from a serious functional or cognitive impairment, or
      (iii) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   . . .

(5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

4

> (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSC, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*, at 3. The catchall "other reasons" provision reflects the USSC's belief that "guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts." (*Id.* at 10.) The "unusually long sentence" provision applies where there have been non-retroactive changes to the law. (*Id.*) This provision recognizes that "[o]ne of the expressed purposes of section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from unusually long sentences." (*Id.* at 11 (citing S. REP. NO. 98–225 (1983)). USSG § 1B1.13(b).

### A. Exhaustion of Remedies

Mancha appropriately exhausted his administrative remedies as required before filing his motion for compassionate release. Mancha asserts that he filed a

request with the warden at MCFP Springfield requesting consideration for compassionate release. (Doc. 88.) Mancha appealed a denial of his request for compassionate release on June 5, 2024. (*Id.* at Ex. 1.) Mancha's appeal was denied on July 1, 2024. (*Id.* at Ex.1). Mancha has exhausted his administrative remedies, as more than 30 days have elapsed since the warden received his request. 18 U.S.C. § 3582(c)(1)(A).

### B. Reason for Reduction

#### a. Medical Condition

Mancha is 69 years old. (Doc. 96 at 3.) Mancha has chronic kidney failure, in addition to a variety of health issues he suffered at the time of sentencing, including diabetes, glaucoma, and hypertension. (*Id.* citing Ex. A.) Mancha is currently at stage four renal failure and requires three hours of dialysis three times per week. (*Id.* citing Ex. B.) Mancha receives multiple insulin injections. (*Id.*) Mancha takes thirteen different oral medications for his numerous conditions and their side effects. (*Id.* citing Ex. A at 23-24.)) Mancha takes prescription eye drops and prescription topical creams. (*Id.*)

Mancha asserts that his kidney failure is a terminal illness pursuant to USSG §1B1.13 (b)(1)(A). (*Id.* at 6.) Kidney failure cannot be reversed or arrested and instead can only be managed through dialysis. (*Id.* citing *United States v. Mapuatuli*, 2021 WL 473719 (D. Hawaii 2021) *citing End-Stage Renal Disease*, Mayo Clinic,

6

https://www.mayoclinic.org/diseasesconditions/end-stage-renal-disease/symptoms-causes/syc-20354532, updated August 17, 2019.) Courts have found that dialysis-dependent, end-stage kidney failure falls within the Commission's definition of a qualifying illness. (*Id*. at 8 citing *United States v. Cotinola*, 487 F. Supp. 3d 1132, 1136 (D. New Mexico 2020) and *United States v. Burke*, 2024 WL 3829969, at *21 (D. New Mexico).) The Government does not respond to Mancha's contention that his kidney failure is a terminal illness pursuant to USSG §1B1.13 (b)(1)(A). (Doc. 98.) The Court finds that Mancha's stage four kidney failure constitutes a terminal illness pursuant to USSG §1B1.13 (b)(1)(A). *Cotinola*, 487 F. Supp. 3d at 1136.

Mancha argues that his kidney failure and additional medical problems prevent him from being able to care for himself within a prison setting. (Doc. 96 at 10.) Mancha contends that his argument is supported by the court's finding in *Cotinola*, 487 F. Supp. 3d at 1136. (*Id*.) The defendant in *Cotinola* was also housed in MCFP Springfield and similarly suffered from end-stage renal failure in combination with several other medical issues. *Cotinola*, 487 F. Supp. 3d at 1136. The defendant in *Cotinola* required dialysis three times a week, the daily administration of fourteen medications, and regular consultations and lab work. *Id*. *Cotinola* concluded that "by necessitating the comprehensive level of care he now receives, [the defendant's] medical conditions have 'substantially diminished' his ability to care for himself within the meaning of the policy statement." *Id*. at 1136-

7

1137 (citing USSG §1B1.13 (1)(A)(ii).)

Mancha contends that he cannot provide for his daily needs without the support of other individuals in the prison. (*Id*. at 10-11.) For example, another inmate in the same cell block as Mancha, Francisco Saldana ("Saldana"), has described assisting Mancha with Mancha's everyday activities. (*Id*. at 11 citing Doc. 88 Ex. 1 at 30.) Saldana asserts that he would wake Mancha up for pill lines and meals and remind Mancha of his doctor appointments and dialysis. (*Id*.) Saldana argues that Mancha would miss these life-saving appointments without Saldana's reminders and assistance. (*Id*.) Saldana further asserts that Mancha needs a walker to walk. (*Id*.) Saldana states that he often walks with Mancha to prevent Mancha from falling as Mancha is still unsteady even with a walker. (*Id*.) Another inmate corroborates Saldana's testimony and adds that occasionally, Mancha will miss meals at the cafeteria because Mancha "cannot walk the distance to the cafeteria in the necessary time." (*Id*.) In denying Mancha's appeal, the BOP found that Mancha can independently perform his activities of daily living in a custodial environment. (Doc. 98 at 8 citing Doc. 88 Ex. 1 at 2.)

The Government asserts that the Court knew of Mancha's poor health at the time of Mancha's sentencing. (*Id*. at 7.) The Government recognizes that the Court could not have known of Mancha's kidney failure as Mancha had not yet been diagnosed with kidney failure at any stage. (*Id*.) The Government asserts that

Mancha's health conditions at the time of sentencing, which included diabetes, hypertension, obesity, and a history of smoking, are all factors that contribute to chronic disease. (*Id.* citing Mayo Clinic, *Diabetic nephropathy (kidney disease)*, Symptoms and Causes, available at: https://www.mayoclinic.org/diseases-conditions/diabetic-nephropathy/symptoms-causes/syc-20354556 (accessed October 29, 2025). The Government argues it was foreseeable that Mancha would suffer from problems with his kidneys at some point based on his previous health conditions. (*Id.*) The Court does not find this argument compelling.

Mancha asserts that "[t]he Sentencing Commission has stated, 'an extraordinary and compelling reason *need not have been unforeseen* at the time of sentencing in order to warrant a reduction in the term of imprisonment.'" (Doc. 96 at 9 (citing *Burke*, 2024 WL 3829969, at *21 citing USSG §1B1.13 (c)).) Mancha further argues that "it is appropriate for a court to reconsider medical conditions that might have been known to the sentencing court if the medical conditions have worsened." (*Id.* citing *United States v. Bellamy*, 2019 WL 3340699, at *4 (D. Minn.).)

The Government further asserts that "BOP staff have taken steps to properly treat Mancha's conditions including housing him in a federal medical facility and ensuring he access to treatment like dialysis and other medications." (Doc. 98 at 7.) The Government concedes that Mancha "requires some assistance either in the form

9

of a walker or wheelchair to move throughout the facility," but asserts that the problem is minimized as Mancha receives assistance from at least one other inmate. (*Id*.) The Government further asserts that no evidence suggests that Mancha "is unable to feed himself, use the restroom himself, clean himself, or get to his medical appointments as necessary." (*Id*. at 7-8.) The Court agrees with the Government generally but notes that the Government's contentions again must be qualified as Mancha seemingly only can meet these needs through the assistance of other inmates. The Court does not think it is proper for the BOP to depend upon other inmates for Mancha's daily care and life-saving treatment.

### b. Mancha's Release Plan

Mancha asks the Court for a sentence reduction to time served. (Doc. 96.) Mancha asserts that if the Court releases Mancha from custody, he will still have five years of supervised release. (*Id*.) Mancha argues that if released, he would live with his sister, Verna Smith-Yallup, in Browning. (*Id*. at 13.) Mancha contends that he could both meet the requirements of supervised release and receive his required dialysis and other medically necessary treatment. (*Id*.) Smith-Yallup has indicated that she is willing to ensure that Mancha participates in his medical care, and she has looked into transportation options for Mancha's medical appointments outside Browning. (*Id*.) Smith-Yallup has certified that her home is wheelchair accessible and already equipped to handle Mancha's disabilities. (*Id*.)

The Government contends that Mancha will still need to rely on the support of others to help him move about the world, access food and medications, and receive necessary medical treatment. (Doc. 98 at 8.) The Government contends that given the extreme gravity and seriousness of Mancha's crime, there is no reason "to release Mancha early from prison so that his care can be shifted from BOP to IHS in a less controlled and monitored environment." (*Id.*)

## CONCLUSION

The Court finds that Mancha's medical conditions rise to the level of extraordinary and compelling circumstances warranting a sentence reduction. Mancha suffers from end-stage kidney failure which constitutes a terminal illness pursuant to USSG §1B1.13 (b)(1)(A). *Cotinola*, 487 F. Supp. 3d at 1136. The Court finds that Mancha's kidney failure and additional medical problems prevent him from being able to care for himself within a prison setting. *Id*. The Court does not see how assistance from other inmates properly can change the Court's analysis of whether Mancha is able to care for himself in a prison setting. The Court finds, like BOP who classified Mancha as a "low risk recidivism level," that Mancha does not pose a high risk to the public at this time. (Doc. 96 at 13 citing Doc. 88 Ex. 1 at 25.) The Court agrees with the Government that the severity and seriousness of Mancha's crime warrant a lengthy sentence.

For these reasons, the Court will reduce Mancha's sentence to 120 months.

Mancha's guideline sentence range, based on his total offense level of 35 and his criminal history category of II, was 188 to 235 months. (PSR at ¶¶ 35, 42, 100.) A sentence reduction to 120 months is around a 33% reduction from the low-end of the guideline range. The Court finds that a sentence reduction to 120 months is justified based on Mancha's extraordinary and compelling circumstances. The Court suggests Mancha file a new request should his circumstances deteriorate.

## ORDER

Accordingly, **IT IS ORDERED** that Mancha's motion for compassionate release (Doc. 88) is **GRANTED. Mancha's sentence is reduced to 120 months.**

DATED this 4th day of November, 2025.

_____
Brian Morris, Chief District Judge
United States District Court